RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
HECTOR J. RIBERA (CSB No. 221511)
hribera@fenwick.com
JOSEPH S. BELICHICK (CSB No. 229371)
jbelichick@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:   (650) 988-8500
Facsimile:    (650) 938-5200

DAVID L. HAYES (CSB No. 122894)
dhayes@fenwick.com
ILANA S. RUBEL (CSB No. 221517)
irubel@fenwick.com
JENNIFER J. JOHNSON (CSB No. 252897)
jjjohnson@fenwick.com
FENWICK & WEST LLP
555 California Street - 12th Floor
San Francisco, CA  94104
Telephone:   (415) 875-2300
Facsimile:    (415) 281-1350

Attorneys for Plaintiff
ACTUATE CORPORATION

E-filing

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SAN FRANCISCO DIVISION

JCS

CV 09 5892

| | |
|---|---|
| ACTUATE CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a Delaware corporation, MRO SOFTWARE, INC., a Massachusetts corporation,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT, COPYRIGHT INFRINGEMENT, CIRCUMVENTION OF COPYRIGHT PROTECTION SYSTEMS, AND FRAUDULENT CONCEALMENT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS** |

COPY

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Plaintiff Actuate Corporation ("Plaintiff" or "Actuate") for its Complaint against

2    International Business Machines Corporation ("IBM") and MRO Software, Inc. ("MRO")

3    (collectively "Defendants") alleges as follows:

4    **THE NATURE OF THE ACTION**

5    1.    This is an action for breach of contract, copyright infringement, circumvention of

6    copyright protection systems, and fraudulent concealment. By this action, Plaintiff Actuate seeks

7    to recover substantial fees owed by Defendant IBM for its use of Actuate's software in

8    connection with IBM's software products. Pursuant to a written agreement between Actuate and

9    Project Software & Development, Inc. and its wholly-owned subsidiaries, including MRO.COM

10   (collectively "MRO"), MRO was granted a limited license to use, distribute, and sublicense

11   certain Actuate software products in exchange for which MRO was obligated to pay certain fees

12   to Actuate. In October 2006, IBM announced that it had acquired MRO, and assumed MRO's

13   rights and obligations under the written agreement with respect to the use, distribution, and

14   sublicensing of Actuate's software. IBM has breached its contractual obligations by failing to

15   pay Actuate the full amount of fees owed to Actuate.

16   2.    Separately, IBM has posted Actuate's software and related materials, including

17   unrestricted license keys, on IBM's publicly available external website — www.ibm.com — for

18   unspecified periods of time in an unprotected and freely available manner for anyone to download

19   and distribute without restriction. This was done by IBM without any license, authorization,

20   consent or permission from Actuate. Indeed the materials were not removed even after Actuate's

21   requests for removal. IBM's unauthorized posting of Actuate's copyrighted software and related

22   materials, including unrestricted license keys, constitutes direct and contributory copyright

23   infringement, as well as circumvention of Actuate's copyright protection systems.

24   3.    In addition, during the negotiations in 2006 between MRO and Actuate to amend

25   the license agreement governing their business relationship, MRO's representatives told Actuate

26   that MRO's distribution of Actuate's software and consumer usage by MRO's customers of

27   Actuate's e-reporting functionality were declining and expected to further decline in the future as

28   MRO worked to remove Actuate's software from MRO's Maximo product. However, MRO

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT                                          CASE NO. _____

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   made no mention at the time of its discussions with IBM, IBM's potential acquisition of MRO, or

2   the potential for the integration of MRO software into IBM's widely disseminated Tivoli product

3   line, events that would lead to distribution of Actuate software vastly beyond any level that could

4   be reasonably anticipated based on historical distribution levels and MRO's representations

5   regarding actual and expected distribution and usage of Actuate's software.  Had MRO told

6   Actuate the full and complete facts, which were known only to MRO and Actuate could not have

7   discovered, Actuate would not have entered into an amendment to the written license agreement

8   on the terms that it did.

9                                   **JURISDICTION AND VENUE**

10          4.       This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq*.  This Court has

11  subject matter jurisdiction over the claims asserted herein under 28 U.S.C. §§ 1331 (federal

12  question) and 1367(a) (supplemental jurisdiction).

13          5.       Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that a

14  substantial part of the events giving rise to the claims herein occurred in this judicial district.

15  Defendant IBM is subject to personal jurisdiction in this district because IBM is found in this

16  district, transacts substantial business in this district, and has agents in this district.  Defendant

17  MRO is subject to personal jurisdiction in this district because it is found in this district and has

18  transacted substantial business in this district.  Further, venue and jurisdiction in this district are

19  proper pursuant to the terms of the written license agreement to which MRO and IBM are parties.

20                                  **INTRADISTRICT ASSIGNMENT**

21          6.       Pursuant to Civil Local Rule 3-5(b), for purposes of Civil Local Rule 3-2(c), this

22  action arises in San Mateo County, where Plaintiff is located and where a substantial part of the

23  actions, events, and statements which give rise to the claims described below occurred.

24                                          **PARTIES**

25          7.       Plaintiff Actuate is a corporation incorporated in the state of Delaware with its

26  headquarters at 2207 Bridgepointe Parkway, Suite 500, San Mateo, California.  Plaintiff develops

27  and licenses enterprise computer software aimed at meeting a broad spectrum of business needs,

28  including information delivery through the provision of sophisticated report development and

1   design tools, as well as interactive viewing applications.  Actuate's products are licensed

2   domestically and internationally to a broad array of enterprise customers and government entities.

3           8.      Plaintiff is informed and believes, and on that basis alleges, that Defendant MRO

4   Software, Inc. is a Massachusetts corporation with its principal place of business in Bedford,

5   Massachusetts.  MRO is a wholly owned subsidiary of IBM.

6           9.      Plaintiff is informed and believes, and on that basis alleges, that Defendant IBM is

7   a Delaware corporation with its principal place of business in Armonk, New York.  IBM has

8   represented itself to be MRO's successor-in-interest and therefore is liable under successor

9   liability for any and all acts and omissions of MRO.

10                                **GENERAL ALLEGATIONS**

11   **Actuate's Copyright Interest in its Software**

12           10.      Actuate has invested millions of dollars and many years of work into the

13   development of its award-winning business intelligence software products.

14           11.      Actuate has complied with the Copyright Act, 17 U.S.C. §101 *et seq.*, and has

15   obtained from the Register of Copyrights a Certificate of Registration for Actuate's iServer and

16   eSpreadsheet software programs and related materials.  A true and correct copy of the Certificate

17   for "Actuate 7" is attached hereto as Exhibit A (Reg. No. TX 006348874).  A true and correct

18   copy of the Certificate for "Actuate 7 SP1" is attached hereto as Exhibit B (Reg. No. TX

19   006348875).  A true and correct copy of the Certificate for "Actuate 7 SP2" is attached hereto as

20   Exhibit C (Reg. No. TX 006348876).  A true and correct copy of the Certificate for "Actuate 9" is

21   attached hereto as Exhibit D (Reg. No. TX 006862866).  A true and correct copy of the

22   Certificate for "Actuate 9 SP1" is attached hereto as Exhibit E (Reg. No. TX 006862880).  A true

23   and correct copy of the Certificate for "Actuate 9 SP2" is attached hereto as Exhibit F (Reg. No.

24   TX 006862885).  A true and correct copy of the Certificate for "Actuate 9 SP3" is attached hereto

25   as Exhibit G (Reg. No. TX 006863869).

26           12.      Actuate has placed a copyright notice on all versions of Actuate's software and

27   related materials that it has published, licensed or distributed.  Any copies of Actuate's software

28   and related materials distributed by Actuate have been published in strict conformity with the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  provisions of the Copyright Act, 17 U.S.C. §101 *et seq.*

2      13.    Actuate is currently and at all relevant times has been the sole owner of all right,

3  title, and interest in and to the copyrights in Actuate's iServer and eSpreadsheet software

4  programs and related materials.

5      14.    To protect its copyrighted software, Actuate uses a license key/file system. An

6  authorized user of Actuate's software obtains a license key/file along with the licensed software

7  package. Depending on the type of copyright license that an end user purchases, the license

8  key/file can enable or disable certain components or functionalities of the program, and can limit

9  the number of computer processors and/or operating systems that can run the program. The user

10  enters the unique license key/file upon installation to obtain only the quantity, components and

11  functionalities of licensed software to which the user is entitled.

12  **The License Agreement with MRO**

13      15.    In December 2000, Plaintiff Actuate entered into a written agreement titled

14  "E.Business Application Partner Software License Agreement" (the December 2000 Software

15  License Agreement and its subsequent amendments are collectively referred to herein as the

16  "License Agreement") with MRO, entitling MRO to use certain Actuate software and to sell

17  licenses to MRO products incorporating certain Actuate software in exchange for MRO's

18  payment of license and maintenance fees to Plaintiff.

19      16.    Among other things, the License Agreement provided that MRO had the limited

20  right to market, distribute and sublicense Actuate software for use with Partner Products that it

21  distributes to new and existing end users during the term of the License Agreement. The License

22  Agreement defines "Partner Products" to mean the MRO software products, specified in an

23  exhibit to the License Agreement (which exhibit was periodically amended). MRO was not

24  entitled to distribute or use Actuate's software except as provided by the License Agreement.

25      17.    MRO distributed the Actuate software with, among other things, its Maximo line

26  of products, and the Maximo products were included within the License Agreement's definition

27  of Partner Products. Among other things, Maximo utilized Actuate's software to create reports

28  from the data stored in the Maximo database, including the creation of graphics out of the data to

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

be reported to users, *e.g.*, pie charts, spread sheets, and dashboards.

18.     The License Agreement addressed the situation in which MRO should acquire, merge with or be acquired by a third party during the term of the License Agreement.  In this situation, the License Agreement provided that use of Actuate's software would continue to be limited to "Partner Products" and their natural successors, which were limited to certain products internally developed by MRO as provided by the License Agreement, as amended.  However, MRO could elect to extend its rights under the License Agreement to permit the use of Actuate software in connection with third-party products by agreeing to pay additional licensee fees as defined by the License Agreement.

19.     Following its initial execution, Plaintiff, MRO and IBM (as successor in interest to MRO) amended the License Agreement five (5) times.  Amendment No. 4, which was effective as of June 30, 2006, gave MRO the unilateral option to extend the term of the License Agreement until December 31, 2011.  IBM, as successor in interest to MRO, exercised its option to extend the term of the License Agreement to December 31, 2011.

**MRO's Misrepresentations to Actuate and IBM's Acquisition of MRO**

20.     The License Agreement between MRO and Actuate allowed MRO to distribute an unlimited number of copies of the specified Actuate software for a flat fee, provided the conditions of the license were met.  This type of "all you can eat" license was not typical for Actuate, which more commonly enters into licenses that provide for payment on a per-copy-distributed basis.  It is of paramount importance when considering an unlimited distribution license that Actuate have an understanding of the size of the licensee's customer base and an estimate of the expected distribution of its software allowed by the license, lest the license result in over-distribution and devaluation of Actuate's software.

21.     In 2006, as the expiration of the License Agreement (as initially amended) drew near, Actuate had to consider whether and on what terms it should extend the term.  In a series of telephonic and in-person meetings and in other communications occurring between May 13 and June 30 of 2006 relating to the negotiation of the terms of Amendment No. 4, MRO's representatives, including Gary Freeman, MRO's Vice President of Advanced Technologies, and

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Peter Rice, MRO's Executive Vice President, Finance & Administration, CFO & Treasurer, represented to Actuate's representatives, including Peter Hoopes, Actuate's Vice President of North American Operations, and Kevin Pennington, an Actuate sales representative responsible for the MRO account, that MRO's distribution of Actuate's software and consumer usage by MRO's customers of Actuate's e-reporting functionality were declining and were expected to further decline in the future as MRO worked to remove Actuate's software from MRO's Maximo product.

22.     In reliance on MRO's representations that it expected usage of Actuate's software to decline, Actuate agreed to renew the license on the same "all you can eat" terms, and with a significantly discounted price. Actuate and MRO entered into Amendment No. 4 effective as of June 30, 2006.

23.     On August 2, 2006, IBM announced it acquired MRO. According to proxy statements filed on August 28, 2006 with the Securities and Exchange Commission, during the time that MRO was negotiating with Actuate regarding Amendment No. 4 and executing that amendment, it was simultaneously in deep discussions with IBM regarding an acquisition. In May 2006, MRO executives met with IBM's representatives in Boston and afterwards commenced merger discussions and due diligence. On June 20, 2006, MRO and IBM representatives met again in Boston and the next day IBM submitted a non-binding offer for MRO. For the next several weeks members of MRO's management team met with representatives of IBM, including a meeting on July 6, 2006 between MRO's President and Chief Executive Officer, Norman E. Drapeau, Jr., and IBM's Managing Director, Archie Colburn, as well as IBM's General Manager of IBM's Tivoli Software Division, Al Zollar.

24.     At the time that Actuate was in discussions with MRO regarding Amendment No. 4, Actuate had no knowledge or information about MRO's discussions and plans with IBM. MRO made no mention at the time of its discussions with IBM, IBM's potential acquisition of MRO, or the potential for the integration of MRO software into IBM's widely disseminated Tivoli product, events that would lead to distribution of Actuate software vastly beyond any level that could be reasonably anticipated based on historical distribution levels.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

25.     Actuate would not have agreed to the terms of Amendment No. 4, including the "all you can eat" license" for a significantly discounted price, had it known that MRO was engaged in serious acquisition discussions with IBM.  Actuate could not reasonably have discovered that MRO was planning to be acquired by IBM, as this information was not publicly available and was not disclosed by MRO.

26.     Upon information and belief, MRO assigned the License Agreement, as amended, to IBM in connection with IBM's acquisition of MRO by way of a reverse triangular merger.

**IBM Uses Actuate's Software Without Authorization in Connection with IBM's Tivoli Software**

27.     On information and belief: (a) the purpose of IBM's acquisition of MRO was to connect MRO's Maximo product (and thus Actuate's software) to IBM's Tivoli management system software; (b) IBM's connection of Maximo (and thus Actuate's software) to IBM's Tivoli management system software has allowed IBM to sell more software to IBM's existing customers; and (c) IBM Global Services has put together software systems for customers, further extending the application of Tivoli and Maximo software (and thus utilizing Actuate's software). Numerous public statements by MRO and IBM, including statements in various sets of product literature, support the above conclusions.

28.     In a letter to its customers dated August 8, 2006 which included FAQs and a press release (which were included in MRO's proxy statements filed with the Securities & Exchange Commission), MRO stated as follows:

- "Following completion of the acquisition, IBM intends to . . . incorporate MRO software technology into IBM's Tivoli software offerings . . . ."

- "IBM will leverage MRO's software portfolio and management consultants to provide clients with a single approach to managing all industrial and IT assets. Since MRO's offerings are built on a modern architecture, they can easily be integrated into IBM's Service Oriented Architecture (SOA)-based capabilities, including business process management and IT service management."

- "IBM's acquisition of MRO . . . provide[s] customers with a consistent, comprehensive set of asset management solutions and services.  MRO asset management technology and consulting services will be integrated into IBM Software and IBM Global Services offerings.  As a result of the acquisition of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

MRO, IBM will be the only company to provide the solution to this convergence of IT and industrial assets."

29.     Press releases, reports and other public communications (some of which were included in MRO's proxy statements filed with the SEC) indicate that Al Zollar, IBM's General Manager for Tivoli Software, has stated as follows:

- "This acquisition will provide companies with a single view into all of their assets, helping them to maximize efficiencies, drive productivity and innovate business processes across the enterprise."

- ". . . IBM has increased Maximo's research and development budget by 50% to seek out better ways to develop the MRO/IBM integration."

- ". . . the companies probably overlap on most of these large customers so it's not necessarily a customer gain for IBM, although IBM may be able to sell more of them on buying Tivoli software."

- "Upon closing, MRO's Software's operations and technology will be rapidly integrated into Tivoli."

- "Combining MRO Software, Inc.'s products with IBM's will provide our customers with enhanced capabilities [and] allow for increased IT operations efficiency and minimized IT costs."

30.     Chip Drapeau, MRO's President and Chief Executive Officer, has said in MRO's proxy statements filed with the SEC: ". . . By integrating our asset management capabilities with IBM, a leader in IT management software and asset management consulting, we can offer our customers a complete asset management solution on a global scale."

31.     The utilization of Actuate software in connection with IBM's Tivoli software, without additional payment by IBM, was not authorized by the License Agreement or its Amendments.  IBM's Tivoli software does not represent an expansion of the authorized MRO Partner Product arising from "internal development," nor is it a "natural successor" to the MRO Partner Product.  Rather, IBM has distributed vast amounts of Actuate software in connection with the Tivoli software when it had no authority to do so.

**IBM's Unauthorized Posting of Actuate's Software on the Internet Without Restriction**

32.     At an unknown point in time, IBM began posting without authorization certain

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   Actuate software and related materials, including development tools, documentation and license

2   keys.  Actuate issued the version 7 and version 9 keys to MRO on September 2, 2003 and

3   November 7, 2007, respectively.  The license keys posted by IBM enable Actuate's software to

4   be installed on an unlimited basis and further allow anyone who has a copy of certain Actuate

5   software to enable additional software components that are extremely valuable and could more

6   than double the price of the software for each computer processor (CPU) to the end-user.

7          33.    In or about the beginning of December 2008, Actuate found its flagship software

8   product, iServer (version 9, Service Pack 2) on IBM's publicly available website—

9   www.ibm.com—without any control on its distribution, or any limit on the use of the available

10  software.  IBM also posted without authorization and in an uncontrolled manner all necessary

11  development tools (including eSpreadsheet Designer 9SP2 and eRD Pro), documentation, and a

12  license key/file that enables Actuate's software to be installed on a stand alone basis, on an

13  unlimited number of CPUs, on the AIX, HP-UX and Solaris operating systems, and on an

14  unlimited number of server nodes.  The version 9 license key/file posted without authorization

15  also allows anyone who has a copy of the version 9 Actuate iServer installation to enable

16  additional Actuate software, including iServer Base, eReport Option, eSpreadsheet Option,

17  eSpreadsheet Engine, Page Level Security Option, and Actuate Query Option.  In addition, if the

18  license key/file was applied to Actuate iServer 9, it allowed upgrades to iServer 9SP1, iServer

19  9SP2, and 9SP3Fix5.  These additional options and upgrades significantly increase the value of

20  the software and when made available, would increase the price of the basic software to the end

21  user by 100% or more for each CPU.  The eSpreadsheet Designer product is a design tool that

22  enables a developer to design and build an eSpreadsheet report executable which could be

23  deployed along with Actuate's iServer software to produce an eSpreadsheet report as a result.

24  Even without Actuate's iServer, the combination of the eSpreadsheet Designer with a generic

25  application server would allow generation and viewing of eSpreadsheet reports by multiple users.

26  In order for the eSpreadsheet report executable to work with iServer, a user's copy of iServer

27  would have to be activated with the eSpreadsheet option for iServer, which could be

28  accomplished with the version 9 iServer license key/file made available by IBM without

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    authorization.

2        34.    Actuate's original software and related materials had been securely distributed to

3    IBM under the License Agreement and IBM had no right under the License Agreement to post

4    such software and related materials on its publicly available website for anyone to download in an

5    uncontrolled and unlimited manner. Despite IBM's obligations under the License Agreement,

6    Actuate's software and related materials were made readily accessible to any Internet user

7    without any control, limit, authentication, registration or validation. Indeed, the IBM webpage

8    that contained Plaintiff's software and related materials could be found using a simple Google

9    search containing non-specific key words.

10       35.    Actuate first learned of this situation on December 3, 2008. After documenting the

11   extent of the situation, Actuate immediately informed IBM of the situation and demanded an

12   immediate response. In response, IBM assured Actuate that all of Actuate's software and related

13   materials were no longer publicly and freely available online in an uncontrolled and unlimited

14   manner.

15       36.    Despite telling Actuate that it would undertake a thorough investigation of the

16   unauthorized posting of Actuate's software and related materials, IBM has been unable or

17   unwilling to provide Actuate with any verifiable data concerning this serious incident.

18       37.    Contrary to IBM's assurances, in May 2009, five months after Actuate had

19   notified IBM of its infringing actions, Actuate found additional copies of its software and related

20   materials, including its version 7 iServer license key/file, Actuate's eSpreadsheet Designer

21   product, eSpreadsheet Engine product, development tools, and documentation, publicly and freely

22   available online at www.ibm.com for anyone to download and use in an uncontrolled and

23   unlimited manner. The version 7 license key/file posted without authorization allows anyone

24   who has a copy of the Actuate version 7 iServer installation to enable additional Actuate

25   software, including iServer Base, eReport Option, eSpreadsheet Option, eSpreadsheet Engine,

26   Page Level Security Option, and Actuate Query Option on an unlimited number of CPUs. In

27   addition, if the license key/file was applied to Actuate iServer 7, it allowed upgrades to iServer

28   7SP1 and iServer 7SP2. These additional options and upgrades significantly increase the value of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the software and when made available, would increase the price of the basic software to the end user by 100% or more for each CPU.  The eSpreadsheet Designer product is a design tool that enables a developer to design and build an eSpreadsheet report executable which could be deployed along with Actuate's iServer software to produce an eSpreadsheet report as a result.  Even without Actuate's iServer, the combination of the eSpreadsheet Designer with a generic application server would allow generation and viewing of eSpreadsheet reports by multiple users.  In order for the eSpreadsheet report executable to work with iServer, a user's copy of iServer would have to be activated with the eSpreadsheet option for iServer, which could be accomplished with the version 7 iServer license key/file made available by IBM without authorization.

38.     On May 11, 2009, Actuate requested that IBM immediately take down the webpage containing Actuate's eSpreadsheet Designer product software and version 7 iServer license key/file.  Further, Actuate demanded that IBM preserve all data associated with the unauthorized webpage and any other webpages where IBM may be posting Actuate software and related materials without authorization by Actuate in an unrestricted and uncontrolled manner.

### FIRST CLAIM FOR RELIEF
**By Actuate Against MRO and IBM**
**(Breach of Contract)**

39.     Plaintiff Actuate realleges each and every allegation set forth in Paragraphs 1 through 38, and incorporates them by reference herein.

40.     The License Agreement is a valid and enforceable written contract.

41.     The License Agreement is a contract to which Defendants IBM and MRO are parties and through which Actuate provided Defendants with a limited license to market, license and distribute the specified Actuate software in exchange for Defendants' payment of fees to Actuate.

42.     Actuate has performed each and all of the conditions, covenants, promises, and obligations imposed upon it by the terms of the License Agreement except those conditions, covenants, promises, and obligations excused by Defendants' material breach of the License Agreement.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

43.     Pursuant to the License Agreement, Defendants were  obligated to pay additional fees for the distribution and use of Actuate's software in connection with third party, non-MRO software.

44.     On information and belief, Defendants intended and have enabled MRO's Maximo software (and thus Actuate's software) to work in connection with non-MRO software, which includes IBM's Tivoli management system software.

45.     Defendants have refused to disclose to Actuate the revenue amounts for their products that are currently identified as being used in connection with MRO's Maximo software (and thus Actuate's software), including the Tivoli management system software.

46.     On information and belief, Defendants have substantially and materially breached the License Agreement by:

    (a)     failing to pay all fees and amounts owed to Actuate under the License Agreement;

    (b)     incorrectly calculating and underpaying fees and other amounts owed to Actuate; and

    (c)     distributing and using licenses to Actuate's software in a manner other than that permitted by the License Agreement.

47.     As a direct and proximate result of these material breaches by Defendants, Actuate has suffered monetary damages in an amount not yet ascertained.

## SECOND CLAIM FOR RELIEF
### By Actuate against IBM
**(Direct and Contributory Copyright Infringement: 17 U.S.C. §§ 101 *et seq.*)**

48.     Plaintiff Actuate realleges each and every allegation set forth in Paragraphs 1 through 38, and incorporates them by reference herein.

49.     By its actions alleged above, Defendant IBM has directly infringed and will continue to infringe Actuate's copyrights in its software and related materials by reproducing, distributing and/or publicly displaying portions of Actuate's software and related materials.

50.     Further, IBM has contributorily infringed and will continue to contributorily infringe Actuate's copyrights in its software and related materials by knowingly inducing, causing

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    and materially contributing to the infringement of plaintiffs' exclusive rights by others and

2    inducing infringement by third parties.

3         51.    On information and belief, the infringing acts of IBM have been deliberate and

4    willful, and in utter disregard of Actuate's rights.  On information and belief, IBM's acts were

5    committed for the purpose of commercial gain.

6         52.    As a result of IBM's actions, Actuate has suffered and will continue to suffer

7    irreparable harm.  Actuate is informed and believes and thereon alleges that IBM may commit

8    further violations of the copyright laws and unless restrained and enjoined, will do so.  Actuate

9    will suffer irreparable harm if IBM is permitted to continue freely distributing Actuate's software

10   and flaunting the copyright protections on Actuate's software.  Actuate's remedy at law is not

11   adequate by itself to compensate it for the harm inflicted and threatened by the IBM.  Therefore,

12   Actuate is entitled to immediate injunctive relief restraining IBM, its officers, agents and

13   employees, and all persons acting in concert with it, from engaging in further such acts in

14   violation of the copyright laws.

15        53.    Actuate is further entitled to recover from IBM the damages it has sustained and

16   will sustain as a result of IBM's wrongful acts as hereinabove alleged.  The amount of such

17   damages will be proven at trial.  Actuate is further entitled to recover from IBM the gains, profits

18   and advantages it has obtained as a result of its wrongful acts described above.  Alternatively,

19   upon its election, Actuate is entitled to recover statutory damages.

**THIRD CLAIM FOR RELIEF**
**By Actuate against IBM**
**(Circumvention of Access Controls and Distribution**
**of Circumvention Tools: 17 U.S.C. § 1201 *et seq.*)**

23        54.    Plaintiff Actuate realleges each and every allegation set forth in Paragraphs 1

24   through 38, and incorporates them by reference herein.

25        55.    Actuate employs certain technological measures, including the use of license

26   keys/files that (a) effectively control access to its software and (b) effectively protect Actuate's

27   copyright rights.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT                                    13                          CASE NO. _____

56.     The license keys/files posted by IBM without authorization on its publicly available website, which Actuate learned of in December 2008 and again in May 2009, enabled Actuate's iServer software program to be installed on an unlimited number of CPU cores, on a number of major operating system, and on an unlimited server nodes.  The same license key/file posted by IBM without authorization also enabled anyone who had a copy of Actuate's v7 iServer or Actuate's v9 iServer to gain unauthorized access to additional Actuate software products.

57.     On information and belief, IBM circumvented a technological measure and/or trafficked in a circumvention technology and device within the meaning of 17 U.SC. 1201 *et seq.* when it repeatedly posted unrestricted license keys to Actuate's software on its publicly available website without authorization from Actuate.

58.     As a result of IBM's wrongful acts, Actuate has suffered and will continue to suffer damages that will be proven at trial.  Actuate is further entitled to recover from IBM the gains, profits and advantages it has obtained as a result of its wrongful acts as hereinabove described.  Actuate will prove the full extent of the gains, profits, and advantages IBM has obtained by reason of its acts of circumvention and trafficking at trial.  Alternatively, upon its election, Actuate is entitled to recover statutory damages.

### FOURTH CLAIM FOR RELIEF
**By Actuate against MRO and IBM
(Fraudulent Concealment)**

59.     Plaintiff Actuate realleges each and every allegation set forth in Paragraphs 1 through 38, and incorporates them by reference herein.

60.     In 2006, MRO and Actuate were in a business relationship whereby Actuate licensed its software to MRO for distribution and/or use by end-users in exchange for payment of certain fees pursuant to the License Agreement.

61.     In 2006, as the expiration of the License Agreement drew near, Actuate and MRO entered into negotiations to extend MRO's rights to market, license and distribute Actuate software with an Amendment No. 4 to the License Agreement.  During these negotiations, MRO made certain representations and disclosed certain facts to Actuate but intentionally failed to disclose others important facts, making MRO's representations and disclosure deceptive and

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    misleading.

2         62.    Specifically, in a series of telephonic and in-person meetings (including at least

3    one meeting occurring at MRO's then-current facilities in Bedford, Massachusetts), and in other

4    communications occurring between May 13 and June 30 of 2006 relating to the negotiation of the

5    terms of Amendment No. 4, MRO's representatives, including Gary Freeman, MRO's Vice

6    President of Advanced Technologies, and Peter Rice, MRO's Executive Vice President, Finance

7    & Administration, CFO & Treasurer, represented to Actuate's representatives, including Peter

8    Hoopes, Actuate's Vice President of North American Operations, and Kevin Pennington, an

9    Actuate sales representative responsible for the MRO account, that MRO's distribution of

10   Actuate's software and consumer usage by MRO's customers of Actuate's e-reporting

11   functionality were declining and expected to further decline in the future as MRO worked to

12   remove Actuate's software from MRO's products.

13        63.    During the negotiations regarding the terms of Amendment No. 4, none of MRO's

14   representatives made any mention to Actuate of MRO's discussions with IBM, MRO's plans for

15   IBM's acquisition of MRO, or the potential for the integration of MRO software into IBM's

16   widely disseminated Tivoli product, events that would lead to distribution of Actuate software

17   vastly beyond any level that could be reasonably anticipated based on historical distribution levels

18   and MRO's representations regarding actual and expected distribution and usage of Actuate's

19   software.

20        64.    During the negotiations regarding the terms of Amendment No. 4, Actuate did not

21   know and could not reasonably have learned of the concealed facts concerning MRO's

22   discussions and plans with IBM and likely increase to the actual and expected distribution and

23   usage of Actuate's software.  Had Actuate known the full and complete facts concealed by MRO,

24   Actuate would not have entered into Amendment No. 4 on the terms that it did.  This potential

25   enormous expansion of the distribution of Actuate's software was a highly material fact that, had

26   it been communicated to Actuate, would have very significantly impacted the terms on which

27   Actuate was willing to extend rights to MRO to license, market and distribute Actuate software.

28        65.    Having represented to Actuate that MRO expected usage of Actuate's software by

COMPLAINT                              15                      CASE NO. _____

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   its customers to decline, MRO had a duty to communicate the fact that MRO was in the course of

2   negotiating its acquisition by IBM, an event that would dramatically increase the distribution of

3   Actuate's software.  Without this disclosure, MRO's representation that usage was expected to

4   decline was materially misleading.

5         66.   On information and belief, MRO intended to deceive and mislead Actuate by

6   concealing the facts regarding MRO's discussions and plans with IBM and likely increase to the

7   actual and expected distribution and usage of Actuate's software, facts which were known only to

8   MRO and which Actuate could not have discovered.

9         67.   Actuate reasonably relied on MRO's concealment and deception.

10        68.   MRO's concealment was a substantial factor in causing Actuate's harm.

11        69.   Actuate was harmed by MRO's concealment and deception and has suffered

12  damages in an amount to be proved at trial.

13        70.   IBM has represented itself to be MRO's successor-in-interest and therefore is

14  liable under successor liability for any and all acts and omissions of MRO.

15  **PRAYER FOR RELIEF**

16  WHEREFORE, Plaintiff Actuate prays for judgment against MRO and IBM as follows:

17      A.   Preliminary and permanent injunctive relief under 17 U.S.C. § 502, enjoining

18          Defendant IBM, its officers, servants, employees, and all persons acting in concert

19          with it or them, from directly or indirectly engaging in acts that infringe Plaintiff's

20          copyrights;

21      B.   Preliminary and permanent injunctive relief under 17 U.S.C. § 1203, enjoining

22          Defendant IBM, its officers, servants, employees, and all persons acting in concert

23          with it or them, from directly or indirectly engaging in acts that (1) circumvent

24          Actuate's technological measures that control access to its software and/or (2)

25          amount to trafficking in circumvention technology that controls access to

26          Actuate's software and/or protects Actuate's copyright rights;

27      C.   An award of damages to Plaintiff Actuate for MRO's and IBM's breach of the

28          License Agreement in an amount to be determined at trial;

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   D.    An award to Plaintiff Actuate of its actual damages under 17 U.S.C. § 504 or, at

2         Plaintiff Actuate's discretion and election, an award under 17 U.S.C. § 504(c) of

3         statutory damages, the statutory damages being in the amount of $150,000 for each

4         infringement of Plaintiffs' works, in view of Defendant IBM's willful

5         infringement;

6   E.    An award to Plaintiff Actuate under 17 U.S.C. § 1203 of its actual damages or, at

7         Plaintiff Actuate's discretion and election, an award of statutory damages;

8   F.    An award to Plaintiff Actuate of its actual damages and exemplary damages for

9         Defendant MRO's fraudulent concealment;

10  G.    For pre-judgment interest in an amount to be determined at trial;

11  H.    An award of the costs, expenses, and attorneys' fees incurred by Plaintiff Actuate

12        herein pursuant to pursuant to 17 U.S.C. §§ 505, 1203 and/or by contract; and

13  I.    Such other and further relief as the Court deems proper and just.

14

Dated:  December 16, 2009                    FENWICK & WEST LLP

15

16

17                                           By: _____
                                                            Rodger R. Cole
18
                                             Attorneys for Plaintiff
19                                           ACTUATE CORPORATION

20

21                              **DEMAND FOR JURY TRIAL**

22

Plaintiff Actuate hereby demands a jury trial on all issues.

23

Dated:  December 16, 2009                    FENWICK & WEST LLP

24

25

26                                           By: _____
                                                            Rodger R. Cole
27
                                             Attorneys for Plaintiff
28                                           ACTUATE CORPORATION

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT                      17                    CASE NO. _____

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2        Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons,

3   associations of persons, firms, partnerships, corporations (including parent corporations) or other

4   entities (i) have a financial interest in the subject matter in controversy or in a party to the

5   proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be

6   substantially affected by the outcome of this proceeding:  None.

7   Dated:  December **6** , 2009           FENWICK & WEST LLP

8

9                     By:

10                              Rodger R. Cole

11             Attorneys for Plaintiff
               ACTUATE CORPORATION

12

13  27287/00401/LIT/1300236.11

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**EXHIBIT A**

Copyright
For curre
website a
right Offi



e.
ce
ry-



Form TX
ra Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

T 6-348-874

EFFECTIVE DATE OF REGISTRATION

JUN 27 2006

Mo          Day          Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1** TITLE OF THIS WORK ▼
Actuate 7.0

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, seri    or collection, give information about the
collective work in which the contribution appeared.    Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼      Number ▼      Issue Da  ▼      On Page ▼

---

**2** **a** NAME OF AUTHOR ▼
Actuate Corporation

DATES OF BIRTH AND DEATH
Year Bo   ▼      Year Died ▼

Was this contribution to the work a      AUTHOR'S NATIONALITY OR DOMICILE
"work made for hire"?                    Name of Country
☑ Yes                          OR { Citizen of ▶
☐ No                                  Domiciled in ▶  U.S.A.

WAS THIS AUTHOR'S CONTRIBUTION TO
THE WORK                     If the answer to either
Anonymous?   ☐ Yes ☑ No      of these questions is
Pseudonymous?  ☐ Yes ☑ No    "Yes," see detailed
                              instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright   claimed. ▼
Computer program

**NOTE**
Under the law,
the "author" of
a "work made
for hire" is
generally the
employer, not
the employee
(see instruc-
tions). For any
part of this
work that was
"made for hire"
check "Yes" in
the space
provided, give
the employer
(or other
person for
whom the work
was prepared)
as "Author" of
that part, and
leave the
space for dates
of birth and
death blank.

**b** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Bo   ▼      Year Died ▼

Was this contribution to the work a      AUTHOR'S NATIONALITY OR DOMICILE
"work made for hire"?                    Name of Country
☐ Yes                          OR { Citizen of ▶
☐ No                                  Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO
THE WORK                     If the answer to either
Anonymous?   ☐ Yes ☐ No      of these questions is
Pseudonymous?  ☐ Yes ☐ No    "Yes," see detailed
                              instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright  claimed. ▼

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Bo   ▼      Year Died ▼

Was this contribution to the work a      AUTHOR'S NATIONALITY OR DOMICILE
"work made for hire"?                    Name of Country
☐ Yes                          OR { Citizen of ▶
☐ No                                  Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO
THE WORK                     If the answer to either
Anonymous?   ☐ Yes ☐ No      of these questions is
Pseudonymous?  ☐ Yes ☐ No    "Yes," see detailed
                              instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright  claimed. ▼

---

**3** **a** YEAR IN WHICH CREATION OF THIS      **b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
WORK WAS COMPLETED  This information          Complete this information  Month ▶ April       Day ▶ 30       Year ▶ 2003
2003          ◀ Year in all cases.            ONLY if this work
                                              has been published.      U.S.A.                                   ◀ Nation

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as
the author given in space 2. ▼
Actuate Corporation
701 Gateway Boulevard
South San Francisco, CA 94080

APPLICATION RECEIVED
JUN 27, 2006
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
June 27, 2006
FUNDS RECEIVED

See instructions
before completing
this space.

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in
space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

---

MORE ON BACK ▶  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.      • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of  2  pages

EXAMINED BY  TMS

CHECKED BY

CORRESPONDENCE
☐ Yes

FORM TX

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**5** PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☐ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▶          Year of Registration ▶

**6** DERIVATIVE WORK OR COMPILATION
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

Previously published versions of Actuate; third party drivers, graphics packages, libraries and optional features.

**a**

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

Revisions and additional text of computer program.

**b**

See instructions
before completing
this space.

**7** DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼          Account Number ▼

**a**

CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Carol Anne Been, Sonnenschein Nath & Rosenthal LLP
7800 Sears Tower, 233 South Wacker Drive
Chicago, Illinois 60606

**b**

Area code and daytime telephone number ▶ (312) 876-3122          Fax number ▶ (312) 876-7934
Email ▶ cbeen@sonnenschein.com

**8** CERTIFICATION* I, the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  Actuate Corporation
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Carol Anne Been                                    Date ▶ 6/15/06

Handwritten signature (X) ▼

X  _Carol Anne Been_

**9** Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Carol Anne Been, Sonnenschein Nath & Rosenthal LLP
Number/Street/Apt ▼
7800 Sears Tower, 233 South Wacker Drive
City/State/ZIP ▼
Chicago, Illinois 60606

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form July 2000—xx   Web Rev: July 2000   ⊕ Printed on recycled paper          U.S. Government Printing Office: 2000-461-113/20,081

**EXHIBIT B**



Copyright Off
For current f
website at ww
right Office, o

© Form TX
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

TX 6-348-875

EFFECTIVE DATE OF REGISTRATION

**JUN 27 2006**

Month        Day        Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼

Actuate 7 SP1

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial or collection, give information about the collective work in which the contribution appeared.   Title of Collective Work ▼

If published in a periodical or serial give:   Volume ▼        Number ▼        Issue Date ▼        On Pages ▼

**2**

**a**   NAME OF AUTHOR ▼

Actuate Corporation

DATES OF BIRTH AND DEATH
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶ U.S.A.

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?        ☐ Yes  ☑ No
Pseudonymous?   ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Computer program

**b**   NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?        ☐ Yes  ☐ No
Pseudonymous?   ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**   NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?        ☐ Yes  ☐ No
Pseudonymous?   ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**

**a**   YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
2003   ◄ Year

**b**   DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ August   Day ▶ 13   Year ▶ 2003
Nation ▶ U.S.A.   ◄ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Actuate Corporation
701 Gateway Boulevard
South San Francisco, CA 94080

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE OFFICE USE ONLY

APPLICATION RECEIVED
June 27, 2006
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
June 27, 2006
FUNDS RECEIVED

See instructions before completing this space.

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-8) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 2 pages

Sonnenschein LLP CDT 8/29/2006 12:38 PM   PAGE   11/017   Fax Server

EXAMINED BY _TVYS_

CHECKED BY

☐ CORRESPONDENCE
☐ Yes

FORM TX

FOR COPYRIGHT OFFICE USE ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**5** **PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☑ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▶                    **Year of Registration** ▶

**6** **DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

a    Previously published versions of Actuate; third party drivers, graphics packages, libraries and optional features.

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

b    Revisions and additional text of computer program.

See instructions before completing this space.

**7** **DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                    Account Number ▼

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼

Carol Anne Been, Sonnenschein Nath & Rosenthal LLP
7800 Sears Tower, 233 South Wacker Drive
Chicago, Illinois 60606

b

Area code and daytime telephone number ▶ **(312) 876-3122**          Fax number ▶ **(312) 876-7934**
Email ▶ cbeen@sonnenschein.com

**8** **CERTIFICATION*** I, the undersigned, hereby certify that I am the
☐ author
☐ other copyright claimant
Check only one ▶ ☐ owner of exclusive right(s)
☑ authorized agent of **Actuate Corporation**
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Carol Anne Been                                      Date ▶ _6/15/06_

Handwritten signature (X) ▼

X _Carol Anne Been_

**9** Certificate will be mailed in window envelope to this address:

Name ▼
Carol Anne Been, Sonnenschein Nath & Rosenthal LLP
Number/Street/Apt ▼
7800 Sears Tower, 233 South Wacker Drive
City/State/ZIP ▼
Chicago, Illinois 60606

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: July 2003—xxx    Web Rev: July 2003    ⊕ Printed on recycled paper                    U.S. Government Printing Office: 2000-461-113/49,021

**EXHIBIT C**



Copyright (
For curren
website at v
right Office



**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

TX 6-348-876

EFFECTIVE DATE OF REGISTRATION

**JUN 27 2006**

Month           Day           Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

**TITLE OF THIS WORK ▼**
Actuate 7 SP2 LP

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   **Title of Collective Work ▼**

If published in a periodical or serial give:   **Volume ▼**        **Number ▼**        **Issue Date ▼**        **On Pages ▼**

---

**2**

**a**

**NAME OF AUTHOR ▼**
Actuate Corporation

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a
"work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ U.S.A.

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☑ No
Pseudonymous?   ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Computer program

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a
"work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a
"work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
2003 ◀ Year

**b**

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ December   Day ▶ 22   Year ▶ 2003
◀ Nation
U.S.A.

**4**

See instructions before completing this space.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Actuate Corporation
701 Gateway Boulevard
South San Francisco, CA 94080

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
June 27, 2006
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
June 27, 2006
FUNDS RECEIVED

---

**MORE ON BACK ▶**   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE

Page 1 of ___ pages

Sonnenschein LLP CDT 6/29/2006 12:38 PM   PAGE   13/017   Fax Server

| EXAMINED BY  _TMS_ | | FORM TX |
| CHECKED BY | | |
| ☐ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUAT** ON SHEET.

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Cop right Office?

☐ Yes  ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▶        Year of Registration ▶

**5**

**DERIVATIVE WORK OR COMPILATION**

Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

Previously published versions of Actuate; third party drivers, graphics packages, libraries and optional  features.

**6**  **a**

Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyrigh is claimed. ▼

Revisions and additional text of computer program.

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account. Name ▼    Account Number ▼

**7**  **a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.    Name/Address  Apt/City/State/ZIP ▼

Carol Anne Boos, Sonnenschein Nath & Rosenthal LLP
7800 Sears Tower, 233 South Wacker Drive
Chicago, Illinois 60606

**b**

Area code and daytime telephone number ▶ (312) 876-3122            Fax number ▶ (312) 876- 934

Email ▶   cboen@sonnenschein.com

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

Check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  Actuate Corporation

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Carol Anne Boen                                        Date▶ 6 26/06

Handwritten signature (X) ▼

X _Carol Anne Boe_

| Certificate will be mailed in window envelope to this address: | Name ▼ Carol Anne Boen, Sonnenschein Nath & Rosenthal LLP | **9** |
| | Number/Street/Apt ▼ 7800 Sears Tower, 233 South Wacker Drive | |
| | City/State/ZIP ▼ Chicago, Illinois 60606 | |

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: July 2003 —est   Web Rev:July 2003   ⊕ Printed on recycled paper            U.S. Government Printing Office: 2000-461-113/20,001

**EXHIBIT D**

Registration Number:

## TX 6-862-866

**Effective date of
registration:**

August 4, 2008

## Title ———————————

| | |
|---|---|
| **Title of Work:** | Actuate 9.0 |

## Completion/ Publication ——————

| | | | |
|---|---|---|---|
| **Year of Completion:** | 2006 | | |
| **Date of 1st Publication:** | September 28, 2006 | **Nation of 1st Publication:** | United States |

## Author ———————————

| | |
|---|---|
| ■ **Author:** | Actuate Corporation |
| **Author Created:** | computer program |
| **Work made for hire:** | Yes |
| **Citizen of:** | United States |

**Domicile in:** United States

## Copyright claimant ——————

| | |
|---|---|
| **Copyright Claimant:** | Actuate Corporation |
| | 2207 Bridgepointe Parkway, Suite 500, San Mateo, CA 94404, United States |

## Limitation of copyright claim ——————

| | |
|---|---|
| **Material excluded from this claim:** | computer program |
| **Previous registration and year:** | TX0006348877   2004 |
| | TX0006348882   2005 |
| **New material included in claim:** | computer program, Revisions and additions |

## Rights and Permissions ——————

| | |
|---|---|
| **Organization Name:** | Actuate Corporation |
| **Name:** | To whom it may concern |
| **Address:** | 2207 Bridgepointe Parkway |
| | Suite 500 |
| | San Mateo, CA 94404  United States |

## Certification

Name: Sharon R. Smith

Date: August 4, 2008

**IPN#:**

**Registration #:**   TX0006862866

**Service Request #:**   1-79797261

Morgan, Lewis & Bockius LLP
Sharon R. Smith
1 Market Street, Spear St Tower
San Francisco, CA 94105  United States

**EXHIBIT E**

Registration Number:

TX 6-862-880

Effective date of
registration:

August 4, 2008

## Title

        **Title of Work:** Actuate 9 SP1

## Completion/ Publication

      **Year of Completion:** 2006

    **Date of 1st Publication:** December 22, 2006       **Nation of 1st Publication:** United States

## Author

           ■    **Author:** Actuate Corporation

      **Author Created:** computer program

    **Work made for hire:** Yes

        **Citizen of:** United States          **Domiciled in:** United States

## Copyright claimant

    **Copyright Claimant:** Actuate Corporation

          2207 Bridgepointe Parkway, Suite 500, San Mateo, CA, 94404, United
States

## Limitation of copyright claim

  **Material excluded from this claim:** computer program

    **Previous registration and year:** Pending      2006

                        TX0006348882   2005

  **New material included in claim:** computer program, revisions and additions

## Rights and Permissions

    **Organization Name:** Actuate Corporation

             **Name:** To whom it may concern

        **Address:** 2207 Bridgepointe Parkway

                 Suite 500

                 San Mateo, CA 94404  United States

## Certification

**Name:** Sharon R. Smith

**Date:** August 4, 2008

IPN#:

Registration #:    TX0006862880

Service Request #:   1-82253081

Morgan, Lewis & Bockius LLP
Sharon R. Smith
1 Market St., Spear St. Tower
San Francisco, CA 94105  United States

**EXHIBIT F**

Registration Number:

# TX 6-862-885

Effective date of
registration:

August 4, 2008

## Title

**Title of Work:** Actuate 9 SP2

## Completion/ Publication

**Year of Completion:** 2007

**Date of 1st Publication:** July 18, 2007          **Nation of 1st Publication:** United States

## Author

- **Author:** Actuate Corporation

  **Author Created:** computer program

  **Work made for hire:** Yes

  **Citizen of:** United States          **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Actuate Corporation

2207 Bridgepointe Parkway, Suite 500, San Mateo, CA, 94404, United
States

## Limitation of copyright claim

**Material excluded from this claim:** computer program

**Previous registration and year:** Pending          2006

Pending          2006

**New material included in claim:** computer program, revisions and additions

## Rights and Permissions

**Organization Name:** Actuate Corporation

**Name:** To whom it may concern

**Address:** 2207 Bridgepointe Parkway

Suite 500

San Mateo, CA 94404 United States

Certification

Name: Sharon R. Smith
Date: August 4, 2008

IPN#:

Registration #:   TX0006862885

Service Request #:   1-82253195

Morgan, Lewis & Bockius LLP
Sharon R. Smith
1 Market Street, Spear St Tower
San Francisco, CA 94105  United States

**EXHIBIT G**

Registration Number:

# TX 6-863-869

Effective date of
registration:

August 4, 2008

## Title

Title of Work: Actuate 9 SP3

## Completion/ Publication

Year of Completion: 2007

Date of 1st Publication: December 21, 2007          Nation of 1st Publication: United States

## Author

■          Author: Actuate Corporation

Author Created: computer program

Work made for hire: Yes

Citizen of: United States          Domiciled in: United States

## Copyright claimant

Copyright Claimant: Actuate Corporation

2207 Bridgepointe Parkway, San Mateo, CA, 94404, United States

## Limitation of copyright claim

Material excluded from this claim: computer program

Previous registration and year: Pending          2007

Pending          2006

New material included in claim: computer program, revisions and additions

## Rights and Permissions

Organization Name: Actuate Corporation

Name: To whom it may concern

Address: 2207 Bridgepointe Parkway

Suite 500

San Mateo, CA 94404  United States

## Certification

**Name:** Sharon R. Smith

**Date:** August 4, 2008

**Correspondence:** Yes