1   MICHAEL J. SHEPARD (State Bar No. 91281)
    MICHAEL L. CHARLSON (State Bar No. 122125)
2   MAREN J. CLOUSE (State Bar No. 228726)
    HOGAN & HARTSON LLP
3   4 Embarcadero Center, 22nd Floor
    San Francisco, California 94111
4   Telephone:  (415) 374-2300
    Facsimile:  (415) 374-2499
5
    Attorneys for Defendants
6   INTERNATIONAL BUSINESS MACHINES
    CORPORATION and MRO SOFTWARE, INC.
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  ACTUATE CORPORATION,                   Case No.:  CV 09 5892 JCS
    a Delaware corporation,
12                                         **DEFENDANTS' NOTICE OF MOTION
                               Plaintiff,  AND MOTION TO DISMISS
13                                         ACTUATE'S COMPLAINT;
                                           MEMORANDUM OF POINTS AND
14           v.                            AUTHORITIES IN SUPPORT**

15  INTERNATIONAL BUSINESS MACHINES
    CORPORATION, a Delaware corporation,
16  MRO SOFTWARE, INC., a Massachusetts
    corporation,
17
                               Defendants.
18  _____
                                           The Honorable Joseph C. Spero
19                                         Courtroom A, 15th Floor
                                           Date:  March 5, 2010
20                                         Time:  9:30 a.m.

21

22

23

24

25

26

27

28

1             **<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>**

2     **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3         **PLEASE TAKE NOTICE THAT** on March 5, 2010, at 9:30 a.m., or as soon

4 thereafter as the matter may be heard by the Court, in the Courtroom of the Honorable

5 Joseph C. Spero, located at 450 Golden Gate Avenue, San Francisco, California, 15th Floor,

6 Courtroom A, defendants International Business Machines Corporation ("IBM") and MRO

7 Software, Inc. ("MRO") will and hereby do move the Court, pursuant to Rule 12(b)(6) of

8 the Federal Rules of Civil Procedure, for an order dismissing with prejudice the third and

9 fourth claims, and dismissing the first claim, in Actuate's Complaint for Breach of Contract,

10 Copyright Infringement, Circumvention of Copyright Protections Systems, and Fraudulent

11 Concealment ("the Complaint"). IBM and MRO's motion is brought on grounds that the

12 Complaint's allegations as to the third claim for violation of the Digital Millennium

13 Copyright Act (the "DMCA") fail to state a claim upon which relief can be granted; that

14 Actuate's fourth claim for fraudulent concealment is barred by the applicable statute of

15 limitations; and that the License Agreement incorporated by reference in the Complaint

16 defeats Actuate's first claim for breach of contract.

17         IBM and MRO's motion is based on this Notice of Motion and Motion, the attached

18 Memorandum of Points and Authorities, the Declarations of James D. Wade and Maren J.

19 Clouse in Support thereof and Exhibits thereto, all pleadings and papers filed in this action,

20 oral argument of counsel, and any other matters as may come before the Court.

21

22

23

24

25

26

27

28

DEFS.' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
CASE NO. CV 09 5892 JCS

## STATEMENT OF ISSUES TO BE DECIDED

## CIVIL LOCAL RULE 7-4(a)(3)

1. Whether Actuate's claim that IBM and MRO violated the DMCA fails because Actuate fails to allege that IBM and MRO "circumvented" access controls within the meaning of the DMCA. 17 U.S.C. § 1201(a)(1); Fed. R. Civ. P. 12(b)(6).

2. Whether Actuate's claim for fraudulent concealment is barred by the applicable statute of limitations. Fed. R. Civ. P. 12(b)(6); N.Y. C.P.L.R. § 213(8).

3. Whether the License Agreement between the parties unambiguously defeats Actuate's claim that IBM and MRO are in breach of the License Agreement for failure to pay additional fees following MRO's acquisition by IBM. Fed. R. Civ. P. 12(b)(6).

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................1

II. SUMMARY OF ACTUATE'S ALLEGATIONS AND CLAIMS AND THE
    APPLICABLE CHOICE OF LAW RULES .......................................................1

  A.  Summary of Facts..........................................................................................1

  B.  Summary of Claims .......................................................................................3

  C.  Applicable Law .............................................................................................4

III. ACTUATE'S FIRST, THIRD, AND FOURTH CLAIMS SHOULD BE
    DISMISSED.......................................................................................................5

  A.  Actuate's Third Claim For Circumvention Of Access Controls And
    Distribution Of Circumvention Tools Fails To State A Claim Under The DMCA
    And Should Be Dismissed With Prejudice...................................................5

  B.  Actuate's Fourth Claim For Fraudulent Concealment Is Time-Barred And
    Should Be Dismissed With Prejudice. ........................................................7

      1.  New York's two-year limitations period on fraud actions
        controls. ..........................................................................................7

      2.  Actuate's allegations establish that it could have discovered the
        facts on which it bases its claim in August 2006. ........................8

      3.  The fraudulent concealment claim should be dismissed with
        prejudice. ........................................................................................9

  C.  Actuate's First Claim For Breach Of Contract Conflicts With The License
    Agreement's Unambiguous Terms And Should Be Dismissed. ................10

      1.  The Court can use the License Agreement to resolve Actuate's
        breach of contract claim. ..............................................................11

      2.  The License Agreement is unambiguous and defeats Actuate's
        allegations that IBM is obligated to make additional payments to
        Actuate because of the MRO acquisition....................................12

IV. CONCLUSION ..............................................................................................14

i

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Aon Fin. Prods., Inc. v. Société Générale*
476 F.3d 90 (2d Cir. 2007) ....................................................... 11

*Bedrosian v. Tenet Healthcare Corp.*
208 F.3d 220 (9th Cir. 2000) ................................................... 11

*Cassirer v. Kingdom of Spain*
580 F.3d 1048 (9th Cir. 2009) ................................................... 5

*Egilman v. Keller & Heckman, LLP*
401 F. Supp. 2d 105 (D.D.C. 2005) ......................................... 5, 6

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*
307 F. Supp. 2d 521 (S.D.N.Y. 2004) ................................... 5, 6, 7

*In re Juniper Networks, Inc. Sec. Litig.*
542 F. Supp. 2d 1037 (N.D. Cal. 2008) ..................................... 8

*Jablon v. Dean Witter & Co.*
614 F.2d 677 (9th Cir. 1980) ..................................................... 8

*J.C. Penney Corp., Inc. v. Carousel Center Co. L.P.*
635 F. Supp. 2d 126 (N.D.N.Y. 2008) ..................................... 11

*Klaxon Co. v. Stentor Elec. Mfg. Co.*
313 U.S. 487 (1941) .............................................................. 4, 7

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*
244 F.R.D. 204 (S.D.N.Y. 2007) ............................................. 11

*Monaco v. Bear Stearns Residential Mortgage Corp.*
554 F. Supp. 2d 1034 (C.D. Cal. 2008) ................................... 11

*New Paradigm Software Corp. v. New Era of Networks, Inc.*
2002 WL 31749396 (S.D.N.Y. 2002) ....................................... 11

*Orkin v. Taylor*
487 F.3d 734 (9th Cir. 2007) ................................................... 10

*R.C. Olmstead, Inc. v. CU Interface LLC*
2009 WL 3049867 (N.D. Ohio 2009) ..................................... 5, 6

ii

*Saul v. United States*
   928 F.2d 829 (9th Cir. 1991) ...................................................................... 7

*Schafer v. Safeway Stores, Inc.*
   2009 WL 275641 (D. Nev. 2009) ............................................................ 11

*Securimetrics, Inc. v. Hartford Cas. Ins. Co.*
   2005 WL 1712008 (N.D. Cal. 2008) ......................................................... 4

*United States v. Ritchie*
   342 F.3d 903 (9th Cir. 2003) ................................................................... 11

*Weidner v. Albertazzi*
   2006 WL 3170009 (D. Or. 2006) ............................................................... 7

**CALIFORNIA CASES**

*ABF Capital Corp. v. Berglass*
   130 Cal. App. 4th 825 (Cal. App. 2005) ..................................................... 8

*Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*
   38 Cal. App. 4th 1532 (Cal. App. 1995) ...................................................... 4

*Nedlloyd Lines B.V. v. Superior Court*
   3 Cal. 4th 459 (1992) ................................................................................ 4

**OTHER STATE CASES**

*Marincovich v. Dunes Hotels & Casinos, Inc.*
   839 N.Y.S.2d 553 (N.Y. App. Div. 2007) .................................................... 9

*Prichard v. 164 Ludlow Corp.*
   854 N.Y.S.2d 53 (N.Y. App. Div. 2008) ..................................................... 8

*Taussig v. Clipper Group, L.P.*
   787 N.Y.S.2d 10 (N.Y. App. Div. 2004) .................................................... 11

**FEDERAL STATUTES**

17 U.S.C. § 1201 *et seq.* ............................................................................... 5

**OTHER STATE STATUTES**

N.Y. C.P.L.R. § 213(8) .................................................................................... 8

iii

1

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 8

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFS.' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
CASE NO. CV 09 5892 JCS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

IBM has a license to use and distribute Actuate's software. In this case, Actuate offers a scattering of complaints about IBM's conduct in obtaining that license and in operating pursuant to it. All four of Actuate's claims are flawed; three of them fail as a matter of law and should be dismissed now.

- IBM did not "circumvent" a technological measure controlling access to Actuate's software in violation of the DMCA. Even crediting the allegation that IBM improperly posted license keys that allowed use of Actuate software, and even if those license keys qualified as technological measures controlling access to the software under the DMCA, the DMCA does not apply to a company that, like IBM, lawfully possessed the license keys—even if its use allegedly exceeded its license.

- Actuate's fraudulent concealment claim is premised on the notion that when it negotiated a 2006 amendment to its license with MRO—a company IBM later acquired—Actuate was not told of the impending acquisition. Actuate then claims that if it had so known, it would not have agreed to the same flat fee for its license. But, as the Complaint itself reflects, Actuate learned *in 2006* what was allegedly concealed. As a result, the governing two-year statue of limitations has long since run on its claim.

- Actuate's claim for breach of contract refers many times to the parties' License Agreement and therefore incorporates it by reference, though the Complaint does not attach it. The License Agreement as a whole, and especially provisions of the contract not mentioned in Actuate's Complaint, establishes as a matter of law that no additional license fees are due to Actuate.

## II.   SUMMARY OF ACTUATE'S ALLEGATIONS AND CLAIMS AND THE APPLICABLE CHOICE OF LAW RULES

### A.   Summary of Facts

The License Agreement that is the basis of the parties' relationship was originally

entered into between Actuate and MRO in 2000.[1]  The License Agreement granted MRO a limited license to use and distribute certain Actuate software in exchange for MRO's payment of license fees—fees that at the time were approximately $380,000 per year. Compl. ¶ 1, 15-16; Lic. Agmt. ¶ 2.1, Ex. A ¶ 5.  MRO was licensed to distribute and sublicense the Actuate software with certain MRO products, including its Maximo line of products; MRO customers used Actuate's software with Maximo to create reports and graphics from data stored in the Maximo database.  Compl. ¶¶ 16, 17; Lic. Agmt. ¶ 1.10, Ex. A ¶ 3.  Actuate agreed to provide support for its software's use with a variety of products, including specified operating systems, databases, and web browsers.  Lic. Agmt. Ex. C.

IBM publicly announced its planned acquisition of MRO in August 2006.  Compl. ¶¶ 23, 28.  IBM has since assumed MRO's rights and obligations under the License Agreement and, according to Actuate, connected MRO's Maximo products with certain other IBM products, including IBM's Tivoli products.  *See* Compl. ¶¶ 1, 27, 44.  Actuate does not allege that IBM has used Actuate software in the absence of Maximo, or that it has connected Actuate's software to any IBM products, including Tivoli products, other than through Maximo.

The License Agreement's duration and the breadth of software licensed to MRO and IBM have been extended by a series of amendments.  Compl. ¶ 19; Lic. Agmt. Am. Nos. 1-5.  In May and June 2006, Actuate and MRO negotiated Amendment No. 4 to the License Agreement, and Actuate agreed to extend the License Agreement with MRO for a flat fee. Compl. ¶¶ 21, 22.  Actuate alleges that MRO concealed from Actuate the fact that it was in acquisition discussions with IBM during the negotiation of Amendment No. 4.  Compl. ¶¶

---

[1]  These facts are drawn from Actuate's Complaint and from the e.Business Application Partner Software License Agreement it cites ("Lic. Agmt."), which is attached as Exhibit A to the Declaration of James D. Wade in Support of Defendants' Motion to Dismiss Complaint.  While IBM and MRO assume the truth of these allegations, as they must for purposes of this motion, they anticipate contesting many of them in the context of Actuate's second claim for copyright infringement, which IBM and MRO do not challenge here.

2

23-24.  More recently, in September 2008, IBM (as successor to MRO) and Actuate entered into Amendment No. 5 to the License Agreement.  Lic. Agmt. Am. No. 5.  Amendment No. 5 extended until the end of 2010 IBM and MRO's license to distribute an unlimited number of copies of Actuate software—and it did so for no additional fee.  *Id.*  For a payment of $1.6 million, Amendment No. 5 also granted IBM and its customers future maintenance services; of that amount, $400,000 was attributed to prior maintenance fees that Actuate said were due under the License Agreement.  *Id.*

Actuate asserts that in 2008, IBM posted on a public IBM website, without authorization, Actuate iServer software and license keys that allowed the unrestricted use of iServer version 7 and version 9 and additional options.  Compl. ¶¶ 2, 33, 37.  Actuate issued the license keys to MRO and IBM in 2003 and 2007, Compl. ¶ 32, because the license keys were necessary to allow MRO and IBM's customers to use the software as contemplated by the License Agreement, Lic. Agmt. ¶ 2.1.

In June 2009, as part of discussions to resolve Actuate's potential claims, IBM agreed to toll any limitations periods applicable to claims that might relate to the License Agreement or the alleged posting.  Declaration of Maren J. Clouse in Support of Defendants' Motion to Dismiss Complaint ("Clouse Decl.") ¶ 3.  Actuate filed its Complaint on December 16, 2009.

### B.    Summary of Claims

Actuate asserts two claims based on its allegation that IBM posted Actuate iServer software and license keys without authorization and in violation of the License Agreement.  Compl. ¶¶ 2, 33, 37.  Based on the alleged posting, Actuate asserts claims for copyright infringement, Compl. ¶¶ 48-53 (second claim), and circumvention of access controls in alleged violation of the DMCA, Compl. ¶¶ 54-58 (third claim).

Actuate makes two additional claims relating to the amount it has received as payment for its software.  Compl. ¶¶ 1, 3.  First, Actuate asserts a claim for fraudulent concealment by MRO.  Compl. ¶¶ 59-70 (fourth claim).  At the time MRO was negotiating

3

Amendment No. 4 to extend the License Agreement for a flat fee, MRO was also allegedly discussing its acquisition by IBM, but concealed that fact from Actuate. Compl. ¶¶ 21-24. Actuate alleges that if it had known of the acquisition, it would not have extended the License Agreement for the same flat fee. Compl. ¶¶ 24, 25.

Second, Actuate asserts a claim for breach of contract. Compl. ¶¶ 39-47 (first claim). Actuate complains that IBM's acquisition of MRO obligates IBM to pay additional license fees under the License Agreement for use of Actuate software "beyond MRO's products." Compl. ¶¶ 18, 39-47. Actuate alleges that following IBM's acquisition of MRO, MRO's Maximo software—and therefore Actuate's software—have been made to work with other IBM products. Compl. ¶ 44. According to Actuate, IBM is therefore required but has failed to pay additional license fees, in putative breach of the License Agreement. Compl. ¶ 46.

### C. Applicable Law

Because the License Agreement contains a choice-of-law clause specifying that it is to be "governed, construed and enforced in accordance with the laws of the state of New York," Lic. Agmt. ¶ 12.3, that state's substantive law governs the substance of the dispute. Federal courts hearing state-law claims apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). California courts, in turn, ordinarily enforce a contractual choice-of-law clause. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-466 (1992).

A choice-of-law clause does not, however, extend to "matters of judicial administration," which California courts interpret to include pleading rules. *See, e.g.*, *Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*, 38 Cal. App. 4th 1532, 1542 n.8 (Cal. App. 1995). Federal rules of pleading therefore apply. *See, e.g.*, *Securimetrics, Inc. v. Hartford Cas. Ins. Co.*, 2005 WL 1712008, at *2 (N.D. Cal. 2008).

In evaluating a motion to dismiss, the court "accept[s] all well-pleaded factual allegations in the complaint as true, and determine[s] whether the factual content allows the

4

1   court to draw the reasonable inference that the defendant is liable for the misconduct

2   alleged." *Cassirer v. Kingdom of Spain*, 580 F.3d 1048, 1052 n.2 (9th Cir. 2009) (internal

3   quotations and citations omitted).

### III.   ACTUATE'S FIRST, THIRD, AND FOURTH CLAIMS SHOULD BE DISMISSED

#### A.   Actuate's Third Claim For Circumvention Of Access Controls And Distribution Of Circumvention Tools Fails To State A Claim Under The DMCA And Should Be Dismissed With Prejudice.

Actuate's third claim is brought under 17 U.S.C. § 1201 *et seq.*, known as the Digital

Millennium Copyright Act, or the DMCA.  The DMCA prohibits circumvention of

technological measures controlling access to a copyrighted work, and it prohibits trafficking

in circumvention devices.  17 U.S.C. § 1201(a)(1), (2).  Actuate alleges that its license key

is a technological measure that effectively controls access to copyrighted Actuate material.

Compl. ¶ 55.  Accepting that allegation as true for purposes of this motion, the license keys

still were not "circumvented" within the meaning of the DMCA.

In every case to have considered the matter, courts have held that improper use of a

password issued by the copyright holder[2] does not amount to "circumvention" of a

technological control prohibited under the DMCA.  *I.M.S. Inquiry Mgmt. Sys., Ltd. v.*

*Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532-33 (S.D.N.Y. 2004); *see also R.C.*

*Olmstead, Inc. v. CU Interface LLC*, 2009 WL 3049867, at *7 (N.D. Ohio 2009); *Egilman*

*v. Keller & Heckman, LLP*, 401 F. Supp. 2d 105, 113-14 (D.D.C. 2005).  This is true even

when the plaintiff can allege that the defendant never had the right to use the password at

all, *I.M.S.*, 307 F. Supp. 2d at 523, a fact that Actuate can *not* allege against IBM.  The

DMCA does not prohibit all unauthorized uses of a password or, in this case, a license key,

but only those uses that result from activity that qualifies as "circumvention."

In *I.M.S.*, the defendant, a competitor of the plaintiff, allegedly used a password

issued to one of the plaintiff's customers to access and copy portions of the plaintiff's

---

[2]   Actuate's license keys are indistinguishable from the passwords at issue in those cases; an authorized user "enters the unique license key/file" to obtain access to Actuate's software.  Compl. ¶ 14.

website without the plaintiff's permission. 307 F. Supp. 2d at 523. The plaintiff nonetheless failed to state a cause of action under the DMCA. As the *I.M.S.* court explained,

> Circumvention requires either descrambling, decrypting, avoiding, bypassing, removing, deactivating, or impairing a technological measure *qua* technological measure. In the instant matter, defendant is not said to have avoided or bypassed the deployed technological measure in the measure's gatekeeping capacity. … [W]hat defendant avoided and bypassed was *permission* to engage and move through the technological measure from the measure's author. … [A] cause of action under the DMCA does not accrue upon unauthorized and injurious access *alone* ….

*Id.* at 532 (emphasis in original). Dismissing similar claims, the *Egilman* court observed that "[w]hat is missing from the statutory definition is any reference to 'use' of a technological measure without the authority of the copyright owner …. [U]sing a username/password combination as intended—by entering a valid username and password, albeit without authorization—does not constitute circumvention under the DMCA." 401 F. Supp. 2d at 113.

The same result was reached in *R.C. Olmstead*, 2009 WL 3049867, at *7, where the court rejected allegations that the defendant, who had licensed the plaintiff's software, violated the DMCA by allowing a third party to use the defendant's password—without the plaintiff's permission—to access the software for purposes of developing a replacement program. The court reasoned that the third party software developer "did not circumvent or bypass any technological measures of [the plaintiff]'s software—it merely used a username and password—the approved methodology—to access the software." *Id.*

Actuate alleges no more in its Complaint than did the plaintiffs in *I.M.S.*, *Egilman*, and *R.C. Olmstead*. Actuate alleges that IBM used, or posted so that others could use, Actuate's license keys "without authorization from Actuate." Compl. ¶ 57. Uniformly, the cases establish that use "without authorization," whether by IBM or by a third party to whom IBM allegedly provided the license keys, does not amount to circumvention as required to state a DMCA claim. There is no allegation that IBM somehow hacked the license keys or bypassed their use, or allowed others to do so. Nor is there an allegation that

6

IBM hacked or bypassed some other technological measure to gain access to the license keys. To the contrary, Paragraph ¶ 32 of the Complaint alleges that Actuate provided the license keys to MRO in 2003 and 2007 (at which time MRO was an IBM subsidiary, Compl. ¶¶ 8, 23) in exchange for consideration and pursuant to a written contract. Accordingly, use of the license keys could not have been the product of "circumvention." Actuate therefore fails to state a claim for violation of the DMCA, and its third claim should be dismissed.

The claim should be dismissed with prejudice because unauthorized use of a legitimately obtained password—in this case, issued to MRO and IBM by Actuate itself pursuant to the License Agreement—does not come within the DMCA's prohibitions. Actuate's claim under the DCMA is based on the alleged posting of the license keys "without authorization." Compl. ¶¶ 56-57. Under these circumstances, any effort by Actuate to replead the claim would therefore be futile. *See I.M.S.*, 307 F. Supp. 2d at 533; *see also Weidner v. Albertazzi*, 2006 WL 3170009, at *2 (D. Or. 2006) (amendment futile where alleged conduct is not proscribed within meaning of statute plaintiff invokes). Dismissal with prejudice is proper where amendment would be futile. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

### B. Actuate's Fourth Claim For Fraudulent Concealment Is Time-Barred And Should Be Dismissed With Prejudice.

Actuate's fourth claim, for fraudulent concealment, is governed by New York's two-year statute of limitations and should be dismissed because Actuate's own allegations leave no doubt that more than two years passed between the revelation of the alleged fraud and the filing of Actuate's Complaint or the parties' agreement to toll the limitations period.

#### 1. New York's two-year limitations period on fraud actions controls.

Because the License Agreement contains a New York choice-of-law clause, Lic. Agmt. ¶ 12.3, New York's two-year statute of limitations on fraud actions applies and bars Actuate's fraudulent concealment claim. Federal courts hearing state-law claims apply the forum state's choice-of-law rules, *Klaxon Co.*, 313 U.S. 487; *see supra* at 4, and California

7

courts, in turn, apply New York's statutes of limitations when deciding whether claims based on contracts controlled by New York law are timely. *ABF Capital Corp. v. Berglass*, 130 Cal. App. 4th 825, 836 (Cal. App. 2005). Under New York law, an action based on fraud—including one alleging that a defendant fraudulently induced a plaintiff to enter into a contract, *Prichard v. 164 Ludlow Corp.*, 854 N.Y.S.2d 53, 54 (N.Y. App. Div. 2008)—must be brought within two years "from the time the plaintiff … discovered the fraud, or could with reasonable diligence have discovered it," N.Y. C.P.L.R. § 213(8).

### 2. Actuate's allegations establish that it could have discovered the facts on which it bases its claim in August 2006.

Because the Complaint pleads facts sufficient to show the claim is untimely, it should be dismissed. "If the expiration of the applicable statute of limitations is apparent from the face of the complaint, the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss." *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1050 (N.D. Cal. 2008) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).

According to the Complaint, MRO concealed from Actuate its acquisition discussions with IBM and plans for integration of MRO products with IBM products. *See, e.g.*, Compl. ¶ 63. Actuate alleges that the concealed acquisition discussions took place in June 2006, at the time Actuate and MRO were negotiating a flat-fee extension of the License Agreement. Compl. ¶¶ 21-24, 63-66. Actuate further claims that it would not have entered into that flat-fee extension if it had known of the IBM acquisition. Compl. ¶ 25, 69. The flat-fee extension was agreed to as Amendment No. 4 to the License Agreement and made effective as of June 30, 2006. Compl. ¶ 22.

The fatal flaw in Actuate's claim is that Actuate also alleges facts that show that it could have learned (and undoubtedly did learn) of the IBM acquisition just over a month later, when the acquisition was *publicly* announced on August 2, 2006. Compl. ¶ 23. According to the Complaint, MRO stated in filings with the Securities & Exchange Commission ("S.E.C.") on August 28, 2006 that its products would be integrated with and

incorporated into IBM products.  Compl. ¶ 23, 28.  By the end of August 2006, then, the

events that Actuate claims would have caused it to behave differently during the negotiation

of Amendment No. 4—IBM's acquisition of MRO and the supposedly planned integration

of the companies' products, Compl. ¶¶ 24-25—had been publicly announced in S.E.C.

filings.  That was more than sufficient to put Actuate on notice of the alleged fraud of which

it now complains, triggering the start of the limitations period.  *Marincovich v. Dunes*

*Hotels & Casinos, Inc.*, 839 N.Y.S.2d 553, 557 (N.Y. App. Div. 2007) (limitations period

began to run when corporation made S.E.C. filings disclosing allegedly fraudulent

transactions).[3]

### 3. The fraudulent concealment claim should be dismissed with prejudice.

Actuate's claim should be dismissed with prejudice because Actuate has pled facts

showing that the claim is time-barred.  The Complaint, which was not filed until December

16, 2009, alleges that IBM's acquisition of MRO and the planned integration of the two

companies' products was publicly disclosed—and therefore discoverable by Actuate—by

August 28, 2006.  The tolling agreement between the parties that was in effect during the

latter half of 2009 does not rescue Actuate's fraudulent concealment claim because that

agreement was not entered into until June 26, 2009, Clouse Decl. ¶ 3—two years and ten

months after the announcement of IBM's acquisition of Actuate and integration of the

companies' products, and well after the two-year limitations period had already expired.

---

[3]  Actuate had a further opportunity to address any alleged unfairness resulting from
IBM's acquisition of MRO.  In September 2008—more than two years after the
acquisition—Actuate executed a further amendment to the License Agreement *with IBM as
the signatory to the amendment*.  Lic. Agmt. Am. No. 5.  Amendment No. 5, which is
incorporated by reference in the Complaint as part of the License Agreement and is
therefore the proper subject of the Court's consideration, extended the term of the license
previously granted by Actuate to distribute unlimited copies of its software for more than
two additional years, until December 31, 2010.  *Id.*  And it did so *for no additional licensing
fee*.  *Id.*  The only payments provided for in Amendment No. 5, $1.6 million, are expressly
for maintenance services, including fees supposedly owed for past maintenance and
unlimited maintenance services into the future for the balance of the License Agreement's
extended term.  *Id.*  That Actuate extended its flat-fee license arrangement with IBM years
after the MRO/IBM integration of which it now complains further undermines Actuate's
claim that it would not have entered into Amendment No. 4 for $1 million if it had known
that IBM was about to acquire Actuate.

This case is analogous to *Orkin v. Taylor*, 487 F.3d 734, 741-42 (9th Cir. 2007), in which the Ninth Circuit affirmed the dismissal of a complaint filed in 2002 seeking recovery of an allegedly stolen painting that, according to the complaint itself, was offered for sale at public auction in 1993. Because the whereabouts of the painting could have been discovered at the time its sale was publicly announced, and because that date was pled in the complaint, the limitations period had long since run, and dismissal was required. *Id.* Like the plaintiffs in *Orkin*, Actuate by its own admission waited too long after discovery of the alleged wrong to bring its claim. Likewise, Actuate's fraudulent concealment claim should therefore be dismissed with prejudice.

### C. Actuate's First Claim For Breach Of Contract Conflicts With The License Agreement's Unambiguous Terms And Should Be Dismissed.

Actuate alleges that IBM owes additional fees under—and thereby breached—the License Agreement because IBM "intended and [has] enabled MRO's Maximo software (and thus Actuate's software) to work in connection with non-MRO software, which includes IBM's Tivoli management system software." Compl. ¶ 44. But this set of allegations fails to state a claim for breach of contract because the License Agreement unambiguously allows IBM to use and distribute Actuate's software without additional payment as long as it distributes the software (under terms that restrict its use) in conjunction with the contemporaneous use of Maximo, regardless of what other products (such as Tivoli) are in turn intended to be used, enabled to be used, or even are in fact used with Maximo.

The Court should dismiss a breach of contract claim when the contract's unambiguous terms defeat the claim. Under the License Agreement, additional fees would owe only if IBM incorporated or integrated Actuate software—free of Maximo—with Tivoli or other products beyond Maximo. Because the Complaint does not allege any such incorporation, it should be dismissed.

**1.** **The Court can use the License Agreement to resolve Actuate's breach of contract claim.**

Although Actuate did not attach the License Agreement to its Complaint, the Complaint makes extensive reference to it, *see, e.g.*, Compl. ¶¶ 15-19, and Actuate relies on it as the basis for its first claim, Compl. ¶¶ 39-47. The License Agreement is therefore incorporated by reference into the Complaint, whether Actuate included it or not, and the Court may consider it in deciding this motion. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim"); *see also Schafer v. Safeway Stores, Inc.*, 2009 WL 275641, at *2 (D. Nev. 2009) (court considered contract attached as exhibit to motion to dismiss because the contract was referred to in the complaint).

The Court may then go on to resolve Actuate's breach of contract claim on a motion to dismiss if "'the terms of the contract are unambiguous.'" *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (quoting *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000)). Under New York law, "interpretation of an unambiguous contract is a question of law for the court, and the provisions of a contract addressing the rights of the parties will prevail over the allegations in the complaint." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (quoting *Taussig v. Clipper Group, L.P.*, 787 N.Y.S.2d 10, 11 (N.Y. App. Div. 2004)). "Where the terms of a contract are clear and unambiguous, [the court] will not look beyond the 'four corners' of the agreement, and parol evidence of the parties' intentions is inadmissible." *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 2002 WL 31749396, at *5 (S.D.N.Y. 2002) (collecting cases and applying New York law). Contract terms are unambiguous where they are clearly defined, regardless of whether a party advocates a different meaning. *Id.*, at *6-7. *See also, e.g., Aon Fin. Prods., Inc. v. Société Générale*, 476 F.3d 90, 96-97, 99 (2d Cir. 2007) (contract is unambiguous where key terms are clearly defined, applying New York law); *J.C. Penney*

11

*Corp., Inc. v. Carousel Center Co. L.P.*, 635 F. Supp. 2d 126, 135-36 (N.D.N.Y. 2008) (same). An evaluation of the License Agreement itself rather than the Complaint's characterization of it should result in the dismissal of the contract claim because the License Agreement's terms establish that Actuate is not entitled to additional license fees.

### 2. The License Agreement is unambiguous and defeats Actuate's allegations that IBM is obligated to make additional payments to Actuate because of the MRO acquisition.

The License Agreement, interpreted under New York law, unambiguously defines when additional license fees are required: Under the License Agreement, as a company that acquired MRO, IBM may continue to use and distribute Actuate software, without additional payment, as long as its use is "in conjunction with the contemporaneous use of Maximo," regardless of whether Maximo in turn works in conjunction with other programs. The relevant definitions are as follows:

- MRO is defined as a "Partner" in the License Agreement's preamble.
- Paragraph 9 of Exhibit A to the License Agreement provides "Should Partner acquire, merge with or be acquired by a third party during the Term, this Agreement shall remain in full force and effect in accordance with its Terms. However, Partner's use of the Software shall continue to be Limited to Partner's Products and their Natural Successors …."
- "Limited" use is, in turn, defined in Paragraph ¶ 1.8 of the License Agreement to mean that "the Software can be used by an End User or in a Hosted Services environment solely in conjunction with the contemporaneous use of Partner Products. Limited Use does not include use of the Software in a standalone fashion or with software or data not incorporated or integrated with Partner Products."
- Maximo is defined as a "Partner Product" in Paragraph 3 of Exhibit A.
- "Software" means Actuate's software, according to Paragraph 1.1 of the License Agreement.

The Complaint sets forth no basis to suggest that post-merger MRO or IBM has exceeded "Limited Use" of Actuate software. Actuate does not allege that IBM is using Actuate software in standalone fashion. Nor does it allege that IBM is using Actuate software with software or data not incorporated or integrated with Maximo. Instead, all Actuate does on this subject is to point to statements made at the time of the MRO acquisition that IBM would "'incorporate MRO software technology into IBM's Tivoli software offerings'" and that MRO technology would be "integrated into" IBM software. Compl. ¶¶ 28-29, 44. But Maximo's alleged incorporation or integration into other IBM software does not violate the License Agreement. As long as Actuate software continues to be used solely in conjunction with the contemporaneous use of Maximo, MRO and IBM's use of Actuate software is "Limited"—and expressly permitted under the License Agreement. Lic. Agmt. ¶¶ 1.8, 2.1. For additional license fees to attach under the License Agreement, IBM would have to incorporate or integrate Actuate's software—free of Maximo—with products beyond Maximo. Lic. Agmt. ¶ 1.8, Ex. A ¶ 9. The Complaint contains no such allegations.

This unambiguous interpretation is underscored by Amendment No. 5 to the License Agreement, signed in 2008. Through Amendment No. 5, Actuate agreed with IBM to extend IBM's rights under the License Agreement until the end of 2010. Lic. Agmt. Am. No. 5. It did so more than two years after IBM's acquisition of MRO and alleged integration of MRO's Maximo product with IBM software such as Tivoli.

Given that the License Agreement's terms unambiguously permit IBM's use without additional payment, the Complaint fails to allege facts that, even if true, would constitute a breach of the unambiguous License Agreement. Actuate's breach of contract claim should therefore be dismissed.

//

//

//

13

# IV. CONCLUSION

For the foregoing reasons, the first, third, and fourth claims of Actuate's Complaint should be dismissed. The third claim and fourth claims, for violation of the DMCA and for fraudulent concealment, should be dismissed without leave to amend.


DATED: January 25, 2010                    HOGAN & HARTSON LLP

                                           By _____/s/ Michael J. Shepard__
                                               Michael J. Shepard

                                           Attorneys for Defendants
                                           INTERNATIONAL BUSINESS MACHINES
                                           CORPORATION and MRO SOFTWARE, INC.